


FILED
12/18/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

KSR

Judge Edmond E. Chang
Magistrate Judge Jeannice W. Appenteng
RANDOM/CAT 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD.,<br>KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD.,<br>XIAOQIN DU,<br>CHIH-YEE JEN,<br>  also known as "Sherman C. Jen,"<br>FINCE TENDIAN, and<br>VLADIMIR NEVTONENKO | Case No.<br><br>Violations: Title 18, United States Code, Sections 1832(a)(3), 1832(a)(4), 1832(a)(5), and 2.<br><br>**UNDER SEAL** |

The SPECIAL APRIL 2024 GRAND JURY charges:

## COUNT ONE

1.  At times material to this Indictment:

    a.  Philips Medical Systems (Cleveland), Inc. was a company organized under the laws of the State of California with its principal place of business in Cleveland, Ohio. Philips Medical Systems DMC, GmbH, was an entity existing under the laws of the Federal Republic of Germany with its principal place of business in Hamburg, Germany (collectively with Philips Medical Systems (Cleveland), Inc., "Philips").

    b.  Among other products, Philips manufactured and sold medical imaging technology, including X-ray tubes, in the United States and internationally.

1

  c. KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD. ("GUOLI") was a company that developed and manufactured electrical vacuum products and was headquartered in Kunshan, China.

  d. KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD. ("YIYUAN") was a company that developed, manufactured, and sold X-ray tubes and was headquartered in Kunshan, China.

  e. Company A was a corporation that GUOLI helped form that developed X-ray tubes and was headquartered in Aurora, Illinois. Company A dissolved on or about November 21, 2022.

### X-Ray Tubes

  f. Philips was engaged in the business of research, development, and sale of medical imaging technology, including computed tomography ("CT") machines used at medical facilities to generate internal images of patients. CT machines contain multiple components, including an X-ray tube.

  g. X-ray tubes contain multiple components. The cathode, anode, rotor apparatus, and the other associated structures are collectively called the X-ray tube insert. The X-ray tube insert is enclosed by a housing structure.

  h. An X-ray tube converts electrical power into X-rays, which are a form of electromagnetic radiation. The X-rays are generated by heating the cathode's filament, which releases electrons directed towards an X-ray tube's anode. During this process, most of the generated energy is lost as heat, with only a portion being

2

converted to X-rays.

  i. An X-ray tube's housing structure dissipates the generated heat and protects the X-ray tube insert, among other functions. The generated X-rays are released through an opening in the housing.

  j. Philips developed, manufactured, and sold multiple lines of X-ray tube products in the United States, and elsewhere, including the Northern District of Illinois.

  k. Philips spent years developing, manufacturing, and selling X-ray tubes.

  l. Philips owned and operated an Aurora, Illinois, facility that engaged in the research, development, and manufacture of X-ray tubes (the "Dunlee Facility").

  m. In or about early 2018, Philips ended its operations at the Dunlee Facility.

### The Individual Defendants

  n. XIAOQIN DU ("DU") was a vice-president in charge of GUOLI's medical X-ray tube division. In or about May 2018, GUOLI formed YIYUAN (collectively with GUOLI, the "KUNSHAN DEFENDANTS") and transferred its medical X-ray tube business to YIYUAN. After YIYUAN was formed, DU became YIYUAN's Vice General Manager.

  o. CHIH-YEE JEN ("JEN"), FINCE TENDIAN ("TENDIAN"),

VLADIMIR NEVTONENKO ("NEVTONENKO") (collectively with DU, the "INDIVIDUAL DEFENDANTS," and with the KUNSHAN DEFENDANTS, the "DEFENDANTS") are Philips former employees who worked on Philips' X-ray tube products at the Dunlee Facility and were recruited in or about late 2017 by GUOLI and DU to work for Company A.

      p.     JEN began working for Philips no later than 2006. JEN worked at the Dunlee Facility as an engineer for Philips' X-ray tube products. JEN worked at Philips until on or about December 29, 2017. In or about January 2018, JEN began working for Company A as an engineer for the KUNSHAN DEFENDANTS' X-ray tube products.

      q.     TENDIAN began working for Philips no later than 1998. TENDIAN worked at the Dunlee Facility as an engineer for Philips' X-ray tube products. TENDIAN worked at Philips until on or about December 29, 2017. In or about January 2018, TENDIAN began working for Company A as an engineer for the KUNSHAN DEFENDANTS' X-ray tube products.

      r.     NEVTONENKO began working for Philips no later than 1998. NEVTONENKO worked at the Dunlee Facility as an engineer for Philips' X-ray tube products. NEVTONENKO worked at Philips until on or about December 29, 2017. In or about January 2018, NEVTONENKO began working for Company A as an engineer for the KUNSHAN DEFENDANTS' X-ray tube products.

**Philips Trade Secret Information**

  s. As part of its normal business operations, Philips created and maintained confidential, proprietary, and trade secret information related to its X-ray tube products. This information was not generally known to the public.

  t. Philips' proprietary, confidential, and trade secret information included documents and specifications related to matters such as the development, testing, manufacture, and operation of its X-ray tubes.

  u. Philips employees, including engineers, developed and modified schematics for X-ray tubes by drafting and updating schematics for multiple X-ray tube components.

  v. Philips employees, including engineers, developed and modified procedure documents for the testing and manufacture of X-ray tubes and their components.

  w. Philips X-ray tube trade secrets included, but were not limited to, the following:

    i. Seasoning protocol for X-ray tube components (Trade Secret A);

    ii. Component specifications for X-ray tube wiring harness component (Trade Secret B);

    iii. Manufacturing processes for X-ray tubes (Trade Secret C);

    iv. Assembly procedures for X-ray tube housing component

5

(Trade Secret D);

   v.  Tolerance measurements for X-ray tube insulating sleeve component (Trade Secret E);

   vi.  Tolerance measurements for X-ray tube housing center section component (Trade Secret F);

   vii.  Tolerance measurements for X-ray tube cathode housing section component (Trade Secret G);

   viii.  Annealing specifications for X-ray tube drain plug component (Trade Secret H);

   ix.  Tolerance measurements for X-ray tube cathode end cap component (Trade Secret I); and

   x.  Code for an X-ray tube component (Trade Secret J).

**Philips Used Reasonable Measures to Protect Its Trade Secrets**

   x.  Philips used a number of reasonable measures to protect its X-ray tube trade secrets and its confidential proprietary information, including, but not limited to, the following:

   i.  Employees permitted to enter the Dunlee Facility were issued a unique identification badge and had to scan the badge to enter the facility's work area.

   ii.  Philips maintained internal databases that held Philips' technical information (the "Internal Databases").

6

    iii.  To access the Internal Databases, users had to be granted access based on their job role.

    iv.  To access the Internal Databases, employees first had to login into the company network with a unique username and password, and then had to separately log into the database with a unique username and password.

    v.  Philips designated certain documents and information as confidential. These designations included "Confidential" and "Restricted (Internal Use Only)."

    vi.  Philips employees signed an Ethics and Intellectual Property Agreement in which they agreed to, among other things, "[n]ot to use, publish or otherwise disclose" either during or after their employment, "any secret or confidential (proprietary) information or data of the company or its customers or any other third party received by the company in confidence," and to upon the termination of their employment, "deliver promptly to the company all written and other materials that relate to the business of the company or its affiliates."

    vii.  JEN, TENDIAN, and NEVTONENKO each signed an Ethics and Intellectual Property Agreement.

    viii.  At or around their termination of employment with Philips, certain Philips employees signed a Settlement and General Release Agreement in which they agreed that "all information" possessed by the employee "relative to the activities of the Philips Group which is of secret or confidential nature," including

7

"technical and production know-how," would not, during the term of the agreement or thereafter, be used for the benefit of or disclosed to others.

    ix.    JEN, TENDIAN, and NEVTONENKO each signed a Settlement and General Release Agreement when they left Philips.

2.    On or about April 19, 2019, Philips filed a civil lawsuit brought in the Northern District of Illinois against Company A alleging theft of Philips X-ray tube trade secrets (the "Civil Case"). The KUNSHAN DEFENDANTS, JEN, and others were later named as defendants in the Civil Case.

3.    Beginning no later than in or about August 2017 and continuing until at least on or about July 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

KUNSHAN GUOLI ELECTRONIC
TECHNOLOGY CO., LTD.,

KUNSHAN YIYUAN
MEDICAL TECHNOLOGY CO., LTD.,

XIAOQIN DU,

CHIH-YEE JEN,
also known as "Sherman C. Jen,"

FINCE TENDIAN, and

VLADIMIR NEVTONENKO,

8

defendants herein, and others known and unknown to the Grand Jury, did knowingly conspire with each other, Company A, and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Sections 1832(a)(1), (2), and (3).

**Manner and Means of the Conspiracy**

4. It was part of the conspiracy that GUOLI and DU helped form Company A to assist GUOLI in the design and manufacture of X-ray tube products. From approximately August 2017 through December 2017, GUOLI and DU recruited and hired JEN, TENDIAN, and NEVTONENKO to work for Company A. In December 2017, JEN, TENDIAN, and NEVTONENKO left Philips after Philips announced it was ending its operations at the Dunlee Facility. For the benefit of GUOLI, DU, and others, JEN took, without authorization, proprietary and trade secret information from Philips before the end of his employment at Philips. Philips' proprietary and trade secret information was later used by the KUNSHAN DEFENDANTS, Company A, and the INDIVIDUAL DEFENDANTS to accelerate the development of the KUNSHAN DEFENDANTS' X-ray tube products. As a result, the KUNSHAN DEFENDANTS' X-ray tube products relied on and contained Philips' proprietary and trade secret information. The KUNSHAN DEFENDANTS' X-ray tube products were later sold in China. In addition, the DEFENDANTS would and did carry out the conspiracy and effect its unlawful objects through the following manner and means, among others:

9

a. It was further part of the conspiracy that JEN, TENDIAN, and NEVTONENKO concealed their planned employment with Company A.

b. It was further part of the conspiracy that, acting on GUOLI's behalf and for GUOLI's benefit, JEN accessed information in the Internal Databases and other locations that contained proprietary and trade secret information related to Philips' X-ray tube technology.

c. It was further part of the conspiracy that, acting on GUOLI's behalf and for GUOLI's benefit, JEN copied, stole, and possessed, without authorization, Philips' trade secret information and retained copies of Philips' trade secret information.

d. It was further part of the conspiracy that, acting with the KUNSHAN DEFENDANTS' knowledge, on the KUNSHAN DEFENDANTS' behalf, and for the KUNSHAN DEFENDANTS' benefit, JEN, TENDIAN, and NEVTONENKO concealed, copied, received and possessed Philips' trade secret information, without authorization.

e. It was further part of the conspiracy that JEN, TENDIAN, and NEVTONENKO, while employed by Company A, and without authorization, possessed Philips documents, including documents containing proprietary and trade secret information, which they used to develop X-ray tube products for the KUNSHAN DEFENDANTS.

f.  It was further part of the conspiracy that the DEFENDANTS concealed, misrepresented and hid and caused to be concealed, misrepresented, and hidden the existence and the purpose of the conspiracy and the acts done in furtherance of the conspiracy.

## Overt Acts

5.  In furtherance of the conspiracy and to achieve the objects and purposes thereof, the DEFENDANTS committed and caused to be committed the following overt acts, among others, in the Northern District of Illinois and elsewhere:

a.  Beginning in or about August 2017, DU, on behalf of GUOLI, began communicating with JEN, who at the time was still employed by Philips, regarding the creation of the U.S.-based X-ray tube research facility that became Company A.

b.  Beginning in or about October 2017, GUOLI and DU began recruiting other Philips employees, including TENDIAN and NEVTONENKO, for employment at Company A.

c.  Before the end of his employment at Philips, JEN copied, without authorization, Philips' X-ray trade secret information, including Trade Secret B, Trade Secret C, Trade Secret I, and Trade Secret J, from the Internal Databases and other locations at Philips.

11

  d.  Before the end of his employment at Philips, JEN stole Philips' X-ray trade secret information, including Trade Secret B, Trade Secret C, Trade Secret I, and Trade Secret J, from the Internal Databases and other locations at Philips.

  e.  After beginning his employment at Company A, JEN copied, possessed, accessed and used documents containing Philips' X-ray trade secret information in connection with his work developing X-ray tubes at Company A.

  f.  After beginning his employment at Company A, JEN also copied, possessed, accessed and shared documents containing Philips' X-ray trade secret information with other Company A employees, including TENDIAN, in connection with their work developing X-ray tubes at Company A.

  g.  After beginning their employment at Company A, TENDIAN and NEVTONENKO copied, received, possessed and used documents containing Philips' X-ray trade secret information in connection with their work developing X-ray tubes at Company A.

  h.  The KUNSHAN DEFENDANTS, JEN, TENDIAN, NEVTONENKO, and Company A possessed Philips documents and technology and used them to develop the KUNSHAN DEFENDANTS' X-ray tube products, which competed with Philips X-ray tube products.

  i.  In a declaration filed in the Civil Case on or about May 18, 2020, DU made a knowingly false statement by declaring that the design of the KUNSHAN DEFENDANTS' GLA2153 model X-ray tube had been completed as of December 27,

2017. That statement was false because, as DU knew, the design of the GLA2153 model X-ray tube was not completed as of December 27, 2017.

j. As late as July 2022, JEN continued to possess and conceal Philips trade secret information.

In violation of Title 18, United States Code, Section 1832(a)(5).

## COUNT TWO

The SPECIAL APRIL 2024 GRAND JURY further charges:

1. Paragraphs 1(a)-(m), (o)-(p), (s)-(v), (w)(x), and (x) are incorporated here.

2. Beginning no later than December 29, 2017 and continuing until at least July 28, 2022, in the Northern District of Illinois and elsewhere,

CHIH-YEE JEN,
also known as "Sherman C. Jen,"

defendant herein, with the intent to convert a trade secret, Trade Secret J, that was related to a product used in and intended for use in interstate and foreign commerce to the economic benefit of a person other than the trade secret's owner, intending and knowing that the offense would injure Philips, did knowingly possess and attempt to possess Trade Secret J, knowing the same to have been stolen and appropriated, obtained, and converted without authorization;

In violation of Title 18, United States Code, Sections 1832(a)(3), (a)(4) and 2.

**FORFEITURE ALLEGATION**

1. Upon conviction of one or more of the offenses alleged in Counts One and Two of this Indictment,

KUNSHAN GUOLI ELECTRONIC
TECHNOLOGY CO., LTD.,

KUNSHAN YIYUAN
MEDICAL TECHNOLOGY CO., LTD.,

XIAOQIN DU,

CHIH-YEE JEN,
also known as "Sherman C. Jen,"

FINCE TENDIAN, and

VLADIMIR NEVTONENKO,

defendants herein, shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1834, 2323 and 28 U.S.C. § 2461, any property, real or personal, constituting or derived from, the proceeds they obtained directly or indirectly as a result of the offenses in the Indictment; any property traceable to such property including, but not limited to a money judgment for a sum of money equal to all of the proceeds obtained as a result of the offense listed in this Indictment; any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of said violation; and any article, the making or trafficking of which is, prohibited under 18 U.S.C. § 1832.

2. If, as a result of any act or omission of the defendants, any property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third person;

      c. has been placed beyond the jurisdiction of the Court;

      d. has been substantially diminished in value; or

      e. has been co-mingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 1834, and 2323, and Title 28, United States Code, Section 2461.

A TRUE BILL:

_____

FOREPERSON

_____
Signed by Barry Jonas on behalf of the
ACTING UNITED STATES ATTORNEY